ANNA JACKSON LEONARD

*v.*

BYRON LEONARD.

(*Knoxville,* September Term, 1960.)

Opinion filed December 9, 1960.

J. MAYES, Rogersville, for petitioner, Byron Leonard.

PHILLIPS & HALE, Rogersville, for respondent, cross-petitioner, Anna Jackson Leonard.

Mr. Justice Burnett delivered the opinion of the Court.

The question for decision in this suit is whether or not a decree of contempt based on a petition for failure to pay installments of alimony is void because it contains no finding that the defendant was able to comply with the decree and wilfully refused to pay the amount in arrears. Our answer to this question is in the negative for reasons hereinafter expressed.

The wife sued her husband in 1956 for divorce and obtained a decree which among other things required the husband to pay $75 a month alimony. There were no children. On July 18, 1959, the wife filed her petition in which she made the original divorce bill and the decree based thereon part of this petition against the husband asking that he be declared in contempt of court because he was delinquent in the payment of three monthly installments.

The defendant answered this petition and admitted that he was in arrears as alleged, but averred his inability to

pay for reason of the fact that he had remarried since the decree and had a wife and two children to support; that his wife had been sick and he owed doctor's bills and owed on a trailer in which they lived. He likewise asked that his answer be treated as a petition for reduction because of this remarriage, the children and a reduction in pay.

The Chancellor on this petition found that the defendant was in contempt and ordered him to pay the back three monthly installments of $225, or upon his failure to do so on a specific date he was to be placed in jail.

The bill of exceptions which was preserved to this finding on the petition for contempt is not a transcript of the testimony taken, nor is it stated in narrative form, but is more or less a summation of the proof offered before the Chancellor by the respective parties. Under such a statement of facts, the way it is stated, it would be hard for anyone reading this record to properly exercise a sound judicial discretion as to whether or not the alleged contemnor was able to comply with the decree at the time the petition was filed or whether or not the payments of alimony should be reduced because of a change in circumstances. We do not comment on these facts one way or the other in view of our conclusion which will hereinafter be stated. Be that as it may, we suggest that the authorities cited by the Court of Appeals in its opinion on the question of reduction of alimony be seriously considered along with testimony offered in the case.

The petitioner here, the husband, says, and his argument is based upon authority, that the decree as brought to the Court of Appeals and consequently to this Court is void because it makes no finding that the defendant was

able to comply with the decree. In support of this argument the petitioner cites *Crowder v. Hayse,* 9 Tenn. App. 55; *Loy v. Loy,* 32 Tenn.App. 470, 222 S.W.2d 873; and *Chappell v. Chappell,* 37 Tenn.App. 242, 261 S.W.2d 824. The first of these cases, the Crowder case, so held in unmistakable terms. This holding was based upon a statement in 6 R.C.L., page 537, which is carried in 12 Am.Jur., page 444, Section 78, which is: "The judgment must show affirmatively the defendant's ability to comply with the order of the court." In 6 R.C.L., as well as in American Jurisprudence, two cases are cited as authority for this statement, one a Federal case wherein the question arose in a bankruptcy proceeding in not complying with the order of that court, and the other is the case of *Ex parte Robertson,* 27 Tex.App. 628, 11 S.W. 669, 11 Am.St.Rep. 207. Our Court of Appeals case, the Crowder case, upon which this holding has been followed in the three Tennessee Appeals Reports, quotes extensively from this Texas opinion and relies strictly thereon. The Texas opinion is a well-reasoned opinion and based upon excellent authority. The trouble though is that the Texas opinion and our divorce cases have an entirely different procedural aspect. Under practically all the law the Texas opinion is correct in this State under a procedure of *habeas corpus* as was the Texas case.

The Texas case, in a few words, as that a summary judgment was taken against a Constable for not complying with certain statutory requirements required of him, in Texas, in serving certain papers, and as a result of not doing so under the statute a judgment was taken against this Constable. The order then requiring him to pay this sum did not state on its face that it was in the power of the defendant to perform the act required of

him, and since the order did not so state it appeared that in placing him in jail for failure to pay this judgment that the order was beyond the jurisdiction of the court to render a judgment for such contempt and that this was necessary to the validity of the judgment, that is, that the man be able to do what he was ordered to do, and since the order did not so state these essential facts then it was void. It is noted though that the difference there and here is that in the Texas case there are numerous other things, and the reasoning of our opinions are likewise, the hearing was on a contempt, that is on the order or decree as it might be in this case, ordering the performance and the failure to do so committing him to jail. There was no record back of this order in the Texas case for consideration in the *habeas corpus* suit upon which the decree was based to show the reasons or facts of whether or not the man could comply with an order of the court and that he failed to do so.

In the case before us, that is a petition for contempt for failure to pay alimony, the order cannot be attacked by the bringing of a *habeas corpus* proceeding based on the inability to comply with the order because the remedy here, where there is a holding of contempt, is by an appeal. *State ex rel. Wright v. Upchurch,* 194 Tenn. 657, 254 S.W.2d 748. Thus on the appeal there is the record which shows the facts and they are fully set forth upon which the contempt order is based. This would not be true in a petition for *habeas corpus*.

In an order for contempt or commitment for failure to perform a decree the order has embodied in it a mittimus to the Sheriff to take the person into custody and confine him to jail for failure to comply with this decree. Thus it is then from an appeal from that, the appellate court

can review and does review the facts and see whether or not there is sufficient evidence to hold the person in contempt.

Section 23-904, T.C.A., provides:

"If the contempt consists in an omission to perform an act which it is yet in the power of the person to perform, he may be imprisoned until he performs it."

In *Cash v. Quenichett,* 52 Tenn. 737, 741, the Court said:

"The general law upon the subject of contempts provides, that where the contempt consists in an omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he performs it. Code, sec. 4108 (now Section 23-904, T.C.A.). The resort to this extreme remedy under this section presupposes the exercise of a sound judicial discretion upon the question whether or not the act ordered to be performed is in fact within the party's power of performance. For if it be not, the power of imprisonment under the law does not exist."

The holding in the Crowder case of the Court of Appeals, supra, was recognized by this Court in an unpublished opinion in 1942 of *Blackwood v. Blackwood,* but was not commented on other than to say that the Court of Appeals had so held and that a certiorari had been denied. This Court though went on and determined the Blackwood case on the facts in the record, even though in that decree there was no holding that the party was able to pay and was willfully in contempt, and found from the facts as shown in the record that it was not shown that he was able to pay and had failed to do

it. This Court in this unpublished opinion likewise held that the Court of Appeals was in error in correcting this order of the lower court to so hold.

In *State ex rel. Anderson v. Daugherty,* 137 Tenn. 125, 191 S.W. 974, this Court very succinctly states the difference between civil and criminal contempts and said, *inter alia:*

"Contempts are of two kinds, civil and criminal. A 'civil contempt' is one where a person refuses or fails to comply with an order of court in a civil case (of course, that is what the contempt is in the instant case); and punishment is meted at the instance and for the benefit of a party litigant. The proceeding is in furtherance of the right of a private person which the court has determined that he, as a litigant, is entitled to. To this class of contempts belong such an act as the refusal to pay alimony, as ordered. Unless special elements of contumacy appear, such refusal is looked upon as a resistance of the opposite party, and not the court itself. If imprisonment be ordered it is remedial and coercive in character, having relation to the compelling of the doing of something by the contemnor which when done will work his discharge. As has been said, in such case the one imprisoned 'carries the keys to his prison in his own pocket.' *In re Nevitt,* 117 Fed. 451, 54 C.C.A. 622."

In Section 922 of the 4th Edition of Gibson's Suits in Chancery, the author deals with punishments for contempt, and says, *inter alia,* "But if the contempt consist in an omission to perform an act ordered by the Court, which it is yet in the power of the contemner to perform,

he may be imprisoned until he performs it." There is no question but that is the general law in this State.

Following the quotation above from Mr. Gibson in this same section, he sets forth a form of order of commitment for not performing a decree containing among other things the recitation that "his answer to said petition showing no sufficient excuse for not performing said decree," and which was probably the form followed in drafting the decree in the instant case. The form in Mr. Gibson's work covers a case where a defendant had been commanded to execute a deed, and the order that he be committed to jail, and there to remain until he did execute the deed exhibited with the petition. In such a case it is apparent that it was within the ability of the defendant to comply with this decree. Mr. Gibson likewise says in this same order that the order of the court convicting a party of contempt should recite the substance of the alleged misconduct and that the defendant is guilty thereof. This unquestionably should be done.

In the type of case as now before us the burden of proof is on the man to show his inability to pay. *Clark v. Clark,* 152 Tenn. 431, 278 S.W. 65. When the defendant testifies under oath that he is without financial ability to conform, an adjudication that he has the ability to pay must rest upon convincing evidence so that the trier of facts may exercise his sound judicial discretion thereon. Of course, if it appears that defendant is being contumacious, or is flouting the court in his acts, and even then if he does not have the ability to pay, it is within the authority of the court under Section 23-903, T.C.A., to fine the defendant $50 and impose a jail sentence on him not to exceed ten days for failure to comply with the decree of the payment of alimony installments, but, as hereinbefore

said, in order to commit him to jail under this Section (23-904, T.C.A.), to compel the performance of the alimony decree, present ability to perform must have been adjudged to exist.

The question we have been discussing, as to whether or not the decree in a contempt alimony case must state on the face of the decree that it is within the ability of the contemnor to pay and when it is not necessary to state, is very clearly pointed out in *State v. Galloway,* 45 Tenn. 326, 337, and in *Warner v. State,* 81 Tenn. 52, 89. Those cases were proceedings to punish for contempt but they were unlike the present type of lawsuit because in those cases no appeal lay. In this present lawsuit an appeal does lie. In other words, they were cases of a summary proceeding while the case we are now considering is not a summary proceeding but one where the offense of not paying the alimony was charged in the court below and was set out in a petition duly sworn to and filed in the case, and where this man was given an opportunity to and did make defense by answer and proof. When we bear these things in mind the following quotation from the Galloway case becomes quite pertinent:

"If the judgment for the contempt be for cause for which the Court has not jurisdiction and it so appears upon the record, the judgment is void, and is no justification for the imprisonment. It stands on the law of universal application to the judgment of Courts that if the Court has no jurisdiction the judgment is void. If, therefore, it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered, that the judgment is upon a cause of contempt, for which the Court has no statutory power to punish, or if it so appears that the punishment in-

flicted is not within the power prescribed by statute for such cause, the judgment will be void for want of jurisdiction of the Court, and will be no justification for the imprisonment or sentence, and no sufficient answer to the writ of *habeas corpus.* * * *

"At common law, a general judgment for contempt, that is, a judgment which does not specify the particular cause of contempt on which the judgment is founded, is held to suffice and be valid: See Summer's case, 5 Iredell's Rep. [149, 27 N.C. 149], and authorities there cited. From this rule of the common law, we think proper to depart, to the extent to require that in the Courts of this State, it shall be essential to the validity of a judgment for contempt of the kind under review here, that it shall state upon its face the cause of contempt alleged, as the ground of jurisdiction on which the judgment is rendered."

What has just been quoted from the Galloway case applies only to cases of the kind there under review, and the reason for the rule there applied was that the ground of jurisdiction on which that judgment was rendered might be shown. Where in the regular proceeding, as in the instant case, the ground of jurisdiction appears in the pleadings and it is only in a summary proceeding that it is necessary to set out the grounds in the judgment.

This rule is stated in the Warner case, supra, "This furnished the safe basis for relief at all times under a habeas corpus, and is as far as public policy demands, as held by these cases, as well as the general current of authority." As said many times in this opinion heretofore, the record shows whether or not the Court had jurisdiction and what the punishment of a contempt was for and

consequently it was not necessary to show on the face of the decree that the man had the ability to comply. We have made a rather extensive investigation of the authorities and texts and think that what has been said above is the recognized rule over the county. In other words, what we have been trying to say is this, that where the jurisdiction of the court is made to depend upon the existence of some fact of which there is an entire absence of proof, it has no authority to act in the premises. Thus on a petition for *habeas corpus,* which would be from an order of commitment, and there was no finding on the face of the decree that the man was able to comply with the terms, then it would be void, but when there is a record on appeal which shows these things pro and con, then clearly the order would not be void but would be a question for the appellate court to use its powers and judgment as in other cases of appeal in acting on questions of fact as have been passed on by the lower court. We are not committed in this case to merely what is in the order of the decree, that would be in the case where contempts are committed in open court. It would have to show then on the face of the decree what the contempt was for, but here the facts are shown by the pleadings, and proof in the record.

The two Court of Appeals cases cited following the Crowder case in 9 Tenn.App. questioned the rule as applied but made no extensive investigation and merely followed that because they felt they had to in view of the fact that a certiorari had been denied in the Crowder case in the first instance. We think that no harm can be done—in fact when it does appear to the Court that a case has been improperly decided on a misapplication of the law where no contracts or great wrong can be done

—that it then becomes our duty to reverse what has been followed as a matter of practice as here over a period of years. We so hold here for the reasons above expressed.

In view of the fact though that this has been the practice by reason of the misapplication of the principle stated to this type of lawsuit, we think that the present case should be remanded so that it may properly be developed and that the Chancellor may exercise his sound judicial discretion as to whether or not the man had the ability to pay and as to whether or not under the facts as developed the payments of alimony should be reduced in view of the fact that there were no children by this first marriage and the man has subsequently married and has other children and those obligations, and that this first wife is working. Of course, he will take all these things into consideration in exercising his sound judicial discretion as to what should be done. This was the effect of the opinion of the Court of Appeals in the present case. In other words, in this present case the Court of Appeals had likewise refused to follow the Crowder case because there was no sound reason therefor.

The writs of both parties were heretofore granted, briefs have been filed and arguments heard, and we think after hearing this, reading the briefs and making a rather extensive independent investigation that the conclusions above reached are correct. The costs of the appeal will be equally taxed as was done by the Court of Appeals and those below will await the outcome there.

A far better practice, of course, is for the court which hears these matters, has the parties before him and hears the proof, to determine whether or not there is the present

inability to comply with the decree and so state in the face of the decree, that is, that in the judgment and discretion of the court that the contemnor does have the present ability to pay and comply with the decree. By thus stating on the face of the decree or in the finding of fact, the appellate courts then have this finding and statement of the trial court upon which very great reliance, of course, is given by them in the consideration on appeal.